IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO M. CHATMAN | ) |
| Plaintiff, | ) ) ) |
| v. | )   Civil Action No. 3:02-227J |
| CITY OF JOHNSTOWN, PENNSYLVANIA and OFFICER MICHAEL S. PAGE, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

GIBSON, J.

This case comes before the Court on Defendants City of Johnstown (hereinafter the "City") and Police Officer Michael S. Page's (hereinafter "Officer Page") (collectively "Defendants") Motion in Limine to Preclude Any Evidence From Plaintiff's Liability Expert, R. Paul McCauley (Document No. 72). Upon consideration of Defendants' motion, Antonio M. Chatman's (hereinafter "Plaintiff") Response to Defendants' Motion in Limine to Preclude Any Evidence From Plaintiff's Liability Expert, R. Paul McCauley (Document No. 77), the Federal Rules of Evidence, relevant case law, and based upon the record in the case *sub judice*, the Court shall grant in part and deny in part the Defendants' motion for the following reasons.

### PROCEDURAL BACKGROUND

As the parties in the case *sub judice* are well aware of the procedural history involved in the above captioned civil action,[1] the Court shall directly address the Defendants' Motion in Limine to Preclude Any Evidence of Plaintiff's Liability Expert and Supporting Brief (Document Nos. 72 & 73).

---

[1] The Court refers the parties to the following documents in order to review the procedural history of the case *sub judice*: Document Nos. 42, 58 & ____).

## DISCUSSION

The Defendants have filed a motion to preclude the Plaintiff's liability expert, R. Paul McCauley (hereinafter "Dr. McCauley"), from presenting any evidence and/or testimony during the federal civil trial in the case *sub judice*. (Document Nos. 72 & 73). Specifically, the Defendants assert that the Plaintiff's liability expert "improperly addresses ultimate issues for the Court[] and jury's determination . . ." (Document No. 73). For instance, the Defendants list a series of allegedly conclusory statements contained within the Plaintiff's liability expert's report. (Document No. 72, Attachment 1). The Defendants also state that any testimony regarding conclusions of law as to whether the Johnstown Police Department and the City of Johnstown acted with "deliberate indifference" toward the Plaintiff should be precluded because "judgment has been entered in favor of the City of Johnstown on the 'deliberate indifference' federal claim, a result confirmed by the Third Circuit." (Document No. 73); *see also* this Court's Memorandum Opinion and Order, dated November 9, 2005.

The Defendants further argue that the Plaintiff's liability expert intends to address "issues not relevant to the case . . . which is unduly prejudicial, distracting and confusing . . ." *Id.* For example, the Defendant claims that the Plaintiff's liability expert should not be permitted to introduce evidence regarding "an alleged failure to investigate after the incidence [of August 2001] . . . because [the Plaintiff] does not have an independent constitutional right to an effective internal investigation of police conduct . . ." (Document No. 72).

Conversely, the Plaintiff argues that his expert will not invade the province of the Court and jury. (Document No. 77). In fact, Plaintiff states that his liability expert will testify to the ultimate issues of the case "such as training and proper police canine procedure. . ." (Document

2

No. 78). Furthermore, the Plaintiff asserts that the "Jury has the ability to determine the capabilities and credentials of the Plaintiff's expert, and to accord such weight as necessary." *Id.* Finally, the Plaintiff claims that the Defendants' "contention that the Plaintiff's expert's testimony regarding the alleged failure of the Defendant to investigate the within incident should be precluded is without merit." *Id.* Specifically, the Plaintiff urges that it is "well accepted by the Third Circuit that in a 1983 action, to succeed on a failure to train claim, a plaintiff must establish that the failure amounts to 'deliberate indifference' to the constitutional rights of person with whom the municipal agents come in contact." *Id. (citing Colburn v. Upper Darby Township*, 946 F.2d 1017, 1028 (3d Cir. 1991).

**Standard of Review**

The Court observes that although the Defendants do not challenge Dr. McCauley's credentials to testify as an "expert" in the case *sub judice*, in an abundance of caution the Court sets forth the appropriate federal standards and relevant factual background upon which the Defendants' motion was considered. Accordingly, the Court observes that Federal Rule of Evidence 702[2] provides that when considering a motion in limine to preclude expert testimony,

---

[2]Specifically, Fed.R.Evid. 702 provides as follows:

**Rule 702. Testimony by Experts**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

a trial judge must first determine, pursuant to Rule 104(a)[3], "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist a trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)(quoted in *Roberson v. City of Philadelphia*, 2001 WL 210294, *2 (E.D. Pa. 2001)).[4] Next, the trial judge must consider the following:

> [The court] 'must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' *Daubert*, 509 U.S. at 589. In making its assessment whether the proposed testimony of the expert is based on scientific knowledge, the following factors may be considered: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) what is the known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted within the relevant community. *Id.* at 593-94.
>
> Additional factors that may be considered are: (1) 'the existence and maintenance of standards controlling the technique's operation;' (2) 'the relationship of the technique to methods which have been established to be reliable;' (3) the qualifications of the expert; and (4) 'the non-judicial uses to which the method has been put.' *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 718, 742 n. 8 (3d Cir. 1994). These factors are non-exclusive and no one of the factors weighs more heavily than another; the approach to determining the admissibility of expert testimony is a flexible one. *Daubert*, 509 U.S. at 594; *see also Kumho Tire Co., Ltd.*

---

[3]Fed.R.Evid. 104(a) provides:

**Rule 104. Preliminary Questions**

(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

[4]Although the factual circumstances in *Roberson*, which led to a federal civil action against the City of Philadelphia and various officers for the alleged violation of 42 U.S.C. § 1983 and pendent state claims of intentional and reckless infliction of emotional distress, are distinct from the factual circumstances involved in the case *sub judice*, one of the issues presented in *Roberson, supra*, is whether the plaintiff's police practices expert (Dr. McCauley) should be precluded and/or limited in his testimony. Since the Court in the case *sub judice* addresses a similar motion in limine to preclude Dr. McCauley's testimony regarding "issues concerning police administration, operations, and policies" (Document No. 72, Attachment 1), the Court cites at length the standards outlined in *Roberson* which are the same standards upon which this Court must presently review the Defendants' Motion in Limine to Preclude Any Evidence From Plaintiff's Liability Expert, R. Paul McCauley. (Document No. 72).

> *v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)(trial judge must have 'considerable leeway' in determining the reliability of expert testimony); *Heller v. Shaw Indust., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999)(plaintiff alleged a carpet caused respiratory illness; the court affirmed the district court's exclusion of a doctor's expert testimony in light of *Daubert* and *In re Paoli* factors as 'simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted.'); *In re Paoli*, 35 F.3d at 742 ('a district court should take into account all of the factors listed by *Daubert* . . . as well as any others that are relevant.')
>
> The reliability of the proffered expert testimony is determined by a lower standard than the 'merits standard of correctness.' *In re Paoli*, 35 F.3d at 744. '[A] judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds,' i.e., if it is based on the methods and procedures of science . . . . [This standard may be met] even though the judge thinks the opinion to be incorrect.' *Id*; *see also Heller*, 167 F.3d at 152-53 (same). '[A] district court must, [nevertheless], examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used.' *Id*. at 153. If there are good grounds, '[t]he analysis of the [expert's] conclusions themselves is for the trier of fact when the expert is subject to cross-examination.' *Kannankeril v. Terminix Internat'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997). The testimony is considered by the jury only if it is first determined that the testimony will assist the trier of fact; in other words, that there is a 'valid scientific connection to the pertinent inquiry.' *Daubert*, 509 U.S. at 592; *see also In re Paoli*, 35 F.3d at 743 (same). This connection has been described as a 'fit' between the testimony offered and the facts of the case. *Daubert*, 509 U.S. at 591.
>
> Since the evidence sought to be precluded here is non-scientific in nature, the factors of *Daubert* and *In re Paoli* provide insufficient guidance for the court to perform its gatekeeping function. In this instance, '[t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience.' *Kumho*, 526 U.S. at 149.

*Roberson*, 2001 WL at *2-3.

Just as Dr. McCauley in *Roberson* "relied on his professional experience, training and skills to reach his conclusions", in the present civil action Dr. McCauley also relies upon his experience, training and education to reach his conclusions regarding the factual circumstances that led to the Plaintiff's federal and state claims against the Defendants.

5

A.      **Dr. McCauley's Expertise**

As set forth in the record, an overview of Dr. McCauley's qualifications and expertise are described as follows:

> I am a Professor of Criminology . . . of the Department of Criminology, Indiana University of Pennsylvania (IUP). . . . I teach and conduct research at all academic/degree levels.
> I am a former Pennsylvania municipal police officer and in that capacity I engaged in the arrest, handcuffing, transportation and processing of individuals. For more than twenty-five of my 30 plus year career, I have been a state certified police instructor in [sic] Pennsylvania, Kentucky, and Florida. In my academic duties, as well as in my police training duties, I teach the policies and procedures of police operations. Also, I have written or published more than 80 professional papers, books, chapters, and technical reports, many of which address the issues concerning police administration, operations, and policies.
> For almost ten years I was a member of the faculty of the Southern Police Institute, School of Police Administration, University of Lousville . . . .
> In 1987, I was a Fulbright Scholar, Australia, lecturing to university faculties of law, justice studies, business, and police commanders, and security directors. My lecture area was the relationship/interaction between public police and private security in the prevention of crime.
> I am a Board Certified Forensic Examiner and have been qualified as a police expert in state and federal courts in more than 30 states, including the United States District Court [for the] Western District of Pennsylvania.

(Document No. 72, Attachment 1).

Although not a comprehensive list of Dr. McCauley's qualifications and expertise concerning police administration, operations, and policies, the Court recalls that based upon the standard set forth in Rule 702 and further explained in *Daubert, In re Paoli*, and *Kumho, supra*, "a witness may be qualified as an expert 'by knowledge, skill, experience, training, or education.'" *Roberson*, 2001 WL at *3 (citing Fed.R.Evid. 702). Accordingly, Dr. McCauley's professional experience, personal knowledge, academic training, and skills qualifies him as an expert.

6

B. **Dr. McCauley's Method**

In the case *sub judice*, Mr. McMauley noted in his report, dated January 26, 2004, that he was retained by Plaintiff's counsel "to review the case material and render a professional opinion regarding the police operations involving a police canine on or about August 14, 2001 . . . involving the above-referenced parties." (Document No. 72, Attachment 1). In order to prepare his report and reach his conclusions, Dr. McCauley reviewed the following materials:

1. Plaintiff's Complaint in Civil Action (Case first filed in State Court then removed to Federal Court);
2. Criminal History Record, Antonio Maurice Chatman;
3. Transcript of Commonwealth v. Antonio Maruice Chatman, Preliminary Hearing, September 6, 2001;
4. Johnstown Police Department K-9 Corps
    Manual, Bates Stamped D0001-D0086;
    Training Reports, Bates Stamped D0087[-]D0124
    K-9 DEMOS, Bates Stamped D0125-D0136;
5. Johnstown Police Department, Incident Report 01-20555, Bates Stamped D0137-D0141;
6. K-9 Usage, Bates Stamped D0142-D0207;
7. Johnstown Police Department, Directive #7 Use of Force, dated may 8, 1996, Bates Stamped D0208-D0212;
8. Copies of photographs of Plaintiff's dog bite wounds, Bates Stamped D0213-D0219;
9. Johnstown Police Department Public Service Report (Complaint) by Antonio M. Chatman, dated 8/25/01, with attachments, Bates Stamped D0220-D0252;
10. Johnstown Police Department, Incident Reports, Bates Stamped D0253-D0312;
11. Copy of Deposition Transcript of Antonio M. Chatman;
12. Copy of Deposition Transcript of Officer Michael Page;
13. Copy of Deposition Transcript of Jeffrey Novotny;
14. Copy of Deposition Transcript of Chief Craig Foust;
15. Copy of Deposition Transcript of Officer Donald Robertson;
16. Certification Rules & Street Ready Police Dog (SRPD);
17. Certified Police Dog I (CPD I): and,
18. Certified Police Dog II (CPD II).

(Document No. 72, Attachment 1).

The Court observes that although Dr. McCauley's method is "not a formal, testable method, it is the one used by police practices experts and [is] accepted by the courts." *Roberson*, 2001 WL at *4. Therefore, the Court acknowledges Dr. McCauley's professional experience and skills, and the Court determines that Dr. McCauley's method is reliable.

### C.   Fit

Next, the Court must determine whether Dr. McCauley has applied his experience reliably to the facts in the case *sub judice*, such that his opinions and conclusions are "well-reasoned, grounded in his experience, and not speculative." *Roberson*, 2001 WL at *4; *see also* Fed.R.Evid. 702 & Advisory Committee Notes, 2000 Amendment.

The Defendants assert that Dr. McCauley improperly states ultimate legal conclusions throughout his report. (Document No. 73). Specifically, the Defendants claim that the following examples evidence Dr. McCauley's inappropriate assertions of ultimate facts to be determined by a jury:

- The use of a police K-9 under these circumstances was unjustified and excessive force. (Document No. 72, Attachment 1, p. 4).
- These engagements/bites were unjustified and excessive force. *Id.* at p. 5.
- Under no circumstances should a K-9 engage and bite a misdemeanant for evasion. *Id.* at p. 10.
- This [Johnstown Police Department] directive provides no objective criteria as required by law. *Id.* at p. 14.
- The JPD failures represent a deliberate indifference to constitutional rights of citizens generally and to Mr. Chatman, specifically. *Id.* at pp. 14-15.
- This failure to require officers to have batons as an immediate alternative to K-9 engagement reflects the JBP's [sic] deliberate indifference to Chatman's safety and well-being. *Id.* at p. 15.
- Officer Page's use of force by K-9 was objectively unreasonable and excessive force under the circumstances. *Id.* at p 15.
- A competent police administrator would know that such administrative failure is contrary to accepted police practices and reflects gross negligence. *Id.* at p. 18.

- Such administrative failure can send a wrong message to the officers of the JPD and, in my opinion would constitute a deliberate indifference towards the constitutional protections of citizens of Johnstown." *Id.* at p. 18.
- Such action or inaction by the JPD reflects a deliberate indifference. *Id.* at p. 19.

(Document Nos. 72, Attachment 1 & 73). Conversely, the Plaintiff asserts that expert testimony "in the form of an opinion or inference otherwise admissible is not objectionable *because it embraces an ultimate issue to be decided by the trier of fact.*" (Document No. 78)(citing Fed.R.Evid. 704(a)). (emphasis in original).

Initially, the Court observes that Fed.R.Evid. 704(a) provides:

**Rule 704. Opinion on Ultimate Issue**

(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

(b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The Court also notes that the Plaintiff intends to call Dr. McCauley as an expert to testify "to the issues of the case such as training and proper police canine procedure . . ." (Document No. 78).

The Court determines that it will allow Dr. McCauley to testify regarding whether the Defendant, Officer Page, failed to follow proper police procedures. *See Roberson, supra.* This testimony is relevant to the jury's determination that Officer Page violated 42 U.S.C. § 1983 and the Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. The Court does not find that such testimony would intrude upon the province of the jury and the jury's role to determine the ultimate issues in the case *sub judice. See Burger v. Mays*, 176 F.R.D. 153,

156 (E.D. Pa. 1997). Therefore, the Court shall deny in part the Defendants' Motion in Limine to Preclude Any Evidence from Plaintiff's Liability Expert regarding Dr. McCauley's testimony about whether the Defendant, Officer Page failed to follow proper police procedure.

The Court, however, will not allow Dr. McCauley "to testify that the Defendant[, Officer Page,] unreasonably seized the Plaintiff or that his actions were unreasonable under the circumstances. Such testimony would invade the province of the jury." *Burger*, 176 F.R.D. at 156; *see also Roberson, supra*. Specifically, "expert testimony which 'merely tell[s] the jury what result to reach,' is improper." *Burger*, 176 F.R.D. at 156 *(quoting* Fed.R.Evid. 704 Advisory Committee's Note). Indeed, "expert testimony that expresses a legal conclusion should be excluded." *Id.* at 157 *(citing Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan and Trust Agreement, et. al.*, 812 F.Supp. 1376, 1378 (E.D. Pa. 1992)).

In the case *sub judice*, any testimony by Dr. McCauley stating that Officer Page's use of force was unreasonable under the factual circumstances, or that Officer Page unreasonably seized the Plaintiff in August of 2001 "would be instructing the jury what result to reach and would be expressing a legal conclusion." *Burger*, 176 F.R.D. at 157. Accordingly, based upon the record, the relevant Federal Rules of Evidence, and prevailing case law, the Court shall grant in part the Defendants' Motion to Preclude Any Evidence from Plaintiff's Liability Expert regarding testimony that Officer Page unreasonably seized the Plaintiff or that Officer Page's actions were unreasonable under the circumstances. Additionally, the Court shall grant in part Defendants' Motion to Preclude Any Evidence from Plaintiff's Liability Expert regarding testimony that expresses a legal conclusion.

### Testimony Regarding Alleged Failure to Investigate

The Court determines that the remainder of Defendants' objections to the testimony of Dr. McCauley can be addressed in a succinct fashion. Specifically, the Defendants assert that "[a]ny testimony that . . . the Johnstown Police Department was deliberately indifferent to constitutional rights" should be precluded as this Court has already entered a judgment in favor of the City of Johnstown regarding Plaintiff's "deliberate indifference" federal claim. (Document No. 73). Furthermore, the Defendants argue that any testimony "regarding an alleged failure to investigate after the incident should be precluded" as the Plaintiff "does not have an independent constitutional right to an effective internal investigation of police conduct." *Id.* (*citing Whichard v. Cheltenham Township*, 1996 WL 502281, *4 (E.D. Pa. 1996)("The Court knows of no independent constitutional right of individuals to an effective internal investigation of police conduct that is actionable under section 1983 . . .").

The Plaintiff's response to Defendants' objections reiterate that Dr. McCauley is permitted to testify as to ultimate issues of the case. (Document No. 78). Furthermore, the Plaintiff asserts that "in a 1983 action, to succeed on a failure to train claim, a plaintiff must establish that the failure amounts to "deliberate indifference" to the constitutional rights of a person with whom the municipal agents come in contact." (Document No. 78)(*citing Colburn v. Upper Darby Township, supra*).

The Court observes that the Plaintiff's remaining claims are as follows:

**Count I**: Plaintiff's federal claim pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that while acting under color of state law, Defendant Officer Page violated the Plaintiff's Fourth Amendment rights;
**Count III**: a state claim against Defendant Officer Page for assault and battery;
**Count IV**: a state claim against Defendant Officer Page for negligence; and
**Count VII**: a state claim against the City of Johnstown for negligence.

(Document Nos. 26 & 28). Furthermore, the Court has already issued its findings regarding a section 1983 claim against the Defendant, City of Johnstown, as follows:

> Accordingly, the Court determines that there is no genuine issue of material fact as to whether the Defendant City of Johnstown deprived the Plaintiff of his constitutional rights by failing to adequately train its K-9 officers, such that the subjective discretion included in the JPD's policies resulted in unreasonable and excessive force when Obi was deployed to apprehend the Plaintiff. Rather, the evidence is so one-sided in favor of Defendant City of Johnstown that it must prevail as a matter of law on this issue.
>
> * * *
>
> Thus, the Plaintiff has not provided sufficient evidence that the municipality acted with deliberate indifference as to known or obvious consequences of the policy or custom it adopted. Rather, the evidence is so one-sided in favor of the Defendant City of Johnstown that it must prevail on this issue as a matter of law. Accordingly, the Court grants the Defendant City of Johnstown's summary judgment motion with regard to the Plaintiff's Section 1983 claim.

(Court Memorandum Opinion and Order, dated August 6, 2004. pp. 41 & 43)(Document No. 42). Accordingly, the Court determines that any testimony regarding an attempt to establish a federal claim against the Defendant, City of Johnstown, is precluded as such testimony is not relevant pursuant to Federal Rules of Evidence 401 and 402; moreover, any testimony attempting to establish deliberate indifference on the part of the Defendant, City of Johnstown, would result in "the danger of unfair prejudice, confusion of the issues, [and/]or misleading the jury." Fed.R.Evid. 403. Finally, upon review of relevant case law, the Court determines that the Plaintiff does not have an independent constitutional right, or an independent federal claim, such that testimony

regarding the alleged failure of the Defendant, City of Johnstown, to investigate the within incident is relevant to the cause now trying before the Court.  *Whichard v. Cheltenham Township*, 1996 WL 502281, *2-3 (E.D. Pa. 1996)(Although the plaintiff, Whichard, cites the appellant's brief in in *Beck v. City of Pittsburgh*, 89 F.3d 966, 974 (3d Cir. 1996) which stated: "The investigative process must be real. It must have some teeth. It must answer to the citizen by providing at least a rudimentary chance of redress when injustice is done. The mere fact of investigation for the sake of investigation does not fulfill a city's obligation to its citizens"; the district court in *Whichard* concluded that "the Third Circuit, in rendering its decision in *Beck*, [did not intend] to declare open season on the internal investigation procedures of municipal police departments. Moreover, this [c]ourt knows of no independent constitutional right of individuals to an effective internal investigation of police conduct that is actionable under section 1983 . . ." *Whichard*, 1996 WL at *4); *see also Wakshul v. City of Philadelphia*, 998 F.Supp. 585, 591-92 (E.D.Pa.,1998)("[I]n *Beck v. City of Pittsburgh*, the Third Circuit held that where defendant police officers had been the subjects of five prior complaints of excessive use of force, there was sufficient evidence of a pattern of violent and inappropriate behavior so as to allow the inference that the Pittsburgh Police Department knew of and tolerated the use of excessive force . [*Beck*,] 89 F.3d 966 (3d Cir.1996). . . . Unlike the factual situation in *Beck*, there is no indication that either [officers] had ever been investigated for excessive force.)

Accordingly, the Court grants in part the Defendants' Motion in Limine to Preclude Any Evidence from Plaintiff's Liability Expert such that Dr. McCauley is precluded from presenting testimony regarding the following: any testimony regarding an attempt to establish a federal claim against the Defendant, City of Johnstown; any testimony attempting to establish deliberate

indifference on the part of the Defendant, City of Johnstown; and, any testimony regarding the alleged failure of the Defendant, City of Johnstown, to investigate the within incident.

An appropriate order follows.

Case 3:02-cv-00227-KRG   Document 93   Filed 11/14/05   Page 15 of 16

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO M. CHATMAN ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 3:02-227J |
| ) | |
| CITY OF JOHNSTOWN, ) | |
| PENNSYLVANIA and OFFICER ) | |
| MICHAEL S. PAGE, ) | |
| Defendants. ) | |

## ORDER

**AND NOW**, this 14th day of November, 2005, upon consideration of Defendants City of Johnstown (hereinafter the "City") and Police Officer Michael S. Page's (hereinafter "Officer Page") (collectively "Defendants") Motion in Limine to Preclude Any Evidence From Plaintiff's Liability Expert, R. Paul McCauley (Document No. 72). Upon consideration of Defendants' motion, Antonio M. Chatman's (hereinafter "Plaintiff") Response to Defendants' Motion in Limine to Preclude Any Evidence From Plaintiff's Liability Expert, R. Paul McCauley (Document No. 77), the Federal Rules of Evidence 702 and 704, the record in the case *sub judice*, and based upon relevant case law, **IT IS HEREBY ORDERED** that Court shall **grant** in part and **deny** in part the Defendants' motion. **IT IS FURTHER ORDERED** that the Court shall **deny** in part the Defendants' Motion in Limine to Preclude Any Evidence From Plaintiff's Liability Expert, R. Paul McCauley, and Dr. McCauley is permitted to testify regarding whether the Defendant, Officer Page, failed to follow proper police procedures; specifically, the Court finds that this testimony is relevant to the jury's determination that Officer Page violated 42 U.S.C. § 1983 and the Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures;

**IT IS FURTHER ORDERED** that the Court shall **grant** in part the Defendants' Motion to Preclude Any Evidence from Plaintiff's Liability Expert regarding testimony that Officer Page unreasonably seized the Plaintiff or that Officer Page's actions were unreasonable under the circumstances; furthermore, the Court shall **grant** in part Defendants' Motion to Preclude Any Evidence from Plaintiff's Liability Expert regarding testimony that expresses a legal conclusion; and

**IT IS FURTHER ORDERED** that the Court shall **grant** in part the Defendants' Motion in Limine to Preclude Any Evidence from Plaintiff's Liability Expert in that Dr. McCauley is precluded from presenting testimony regarding the following: any testimony regarding an attempt to establish a federal claim against the Defendant, City of Johnstown; any testimony attempting to establish deliberate indifference on the part of the Defendant, City of Johnstown; and, any testimony regarding the alleged failure of the Defendant, City of Johnstown, to investigate the within incident.

BY THE COURT:

_____
United States District Court Judge
The Honorable Kim R. Gibson

cc:   All counsel of record.